UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DUSTY DAVID JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-CV-375 |
| ) | (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment [Doc. 13] and the Defendant's Motion for Summary Judgment [Doc. 17]. The Plaintiff Dusty David Jones ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") James A. Sparks to deny him benefits, which was the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On November 15, 2005, the Plaintiff applied for Disability Insurance Benefits ("DIB") alleging a disability onset date beginning on June 10, 2006. [Tr. 11]. On December 2, 2008, ALJ Sparks held a hearing, and on April 8, 2009, issued a decision finding the Plaintiff "not disabled." [Tr. 23-42; 8-22]. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-3]. The Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g).

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since June 10, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post multiple fractures from motor vehicle accidents in 1999 and 2006 including a cervical spine fracture, heel fracture, clavicular and mandibular fracture, femur fracture along with a sternotomy and ventricular repair; chronic pain and depress (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). He can walk, sit and stand six hours total each in an 8-hour workday with normal breaks; occasionally lift and/or carry 50 pounds and frequently lift and carry 25 pounds. He further would have some difficulty with extended concentration but still could perform simply and detailed tasks over a fully work week and could adapt to gradual changes.

6. The claimant is capable of performing past relevant work as a rural mail carrier and a cleaner, industrial. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 10, 2006 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 13-22].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his

3

>   past relevant work, if other work exists in the national economy that
>   accommodates his residual functional capacity and vocational factors
>   (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III.    STANDARD OF REVIEW**

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, the Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v.

4

Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV. ANALYSIS

The Plaintiff argues that the decision of the ALJ was not based on substantial evidence. Specifically, the Plaintiff argues that the ALJ erred by (A) failing to properly weigh the opinions of his treating physicians, examining physicians, and non-examining physicians; (B) failing to address the vocational evaluation prepared by certified vocational evaluator, Becky Brown; and (C) failing to explain his credibility determination. [Doc. 14 at 19-23]. The Commissioner responds that (A) the ALJ properly considered and explained his consideration of the medical opinions of record; (B) the ALJ did not err in considering the vocational evaluation of Ms. Brown in December 2006; and (C) the ALJ's credibility finding is supported by substantial evidence. [Doc. 18 at 14-20].

**A. The Weight Afforded to the Medical Opinions of Record**

*1. Physical Medical Opinions of Record*

The Plaintiff argues that the ALJ erred by adopting the opinions of non-examining sources Lloyd Walwyn, M.D., and James M. Moore, M.D., without providing an explanation for the rejection of his treating physicians, Larry C. Huskey, M.D., and William R. Oros, M.D. [Doc. 14 at 19-20]. The Commissioner responds that the Plaintiff incorrectly cites the treatment records of Dr. Huskey and Dr. Oros because such evidence does not constitute a "medical opinion" of a treating physician as defined by 20 C.F.R. § 404.1527. [Doc. 18 at 14-17]. In addition, the Commissioner contends that the ALJ did not err in his consideration of the November 2006 Physical Capacity Worksheet [Tr. 414] completed by Dr. Huskey because the opinion did not state such limitations were permanent restrictions and the record reveals the Plaintiff's condition improved. [Doc. 18 at

5

17].

When determining a claimant's physical RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), *and* [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added). The ALJ "must" give a medical opinion provided by a claimant's treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is "not inconsistent with the other substantial evidence in the case record." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544; see 20 C.F.R. § 404.1527(d)(2).

When determining his RFC, the Plaintiff asserts that the ALJ erred by relying on the opinions of non-examining physicians, Drs. Walwyn and Moore, despite contradictory treatment notes from his treating physicians, Drs. Huskey and Oros. For example, the Plaintiff cites the Court to Dr. Huskey's September 2006 treatment notes which indicate that on the day of his appointment, the Plaintiff was "still using crutches and was wearing a brace on his severely damaged foot." [Doc. 20 at 14]. In addition, the Plaintiff states that Dr. Oros's January 10, 2007 evaluation indicated that the Plaintiff had major surgery on his foot to remove hardware, underwent a bone graft, and fused his right foot. [Tr. 519]. The Plaintiff contends that the ALJ's RFC determination that he could perform medium work is in "stark contrast" to the above statements of his treating physicians.

To the degree that the treatment notes cited by the Plaintiff can be considered "medical opinions" at all, they are only opinions about the existence of physical symptoms and not opinions

6

about the severity of the Plaintiff's condition or the degree that the Plaintiff was limited by such condition. Accordingly, the doctors' treatment notes did not contain enough information to be considered medical opinions that were entitled to controlling weight. The Court finds that the documents cited by the Plaintiff were simply not useful to the ALJ's task of determining the Plaintiff's RFC.

In addition to citing the Court to treatment notes from both Dr. Huskey and Dr. Oros, the Plaintiff notes the ALJ's treatment of Dr. Huskey's Physical Capacity Worksheet [Tr. 414]. The Plaintiff asserts that the ALJ failed to explain his rejection of Dr. Huskey's November 2006 opinion, which indicated that the Plaintiff could sit for six hours in an eight-hour workday, but could not stand or walk at all; could sustain work activity for six hours in an eight-hour workday; and could lift as much as fifty pounds, but should never lift more than fifty pounds. [Tr. 414].

An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to a treating source's non-controlling opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 401 (6th Cir. 2009) (remanding a claim to the Commissioner "because the ALJ failed to give good

7

reasons for discounting the opinions of [the claimant]'s treating physicians"). In order to determine the proper weight to give to a treating source's non-controlling opinion, the ALJ must conduct a six-factor analysis. See 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). "The Commissioner may consider the opinion of a non-examining medical expert if the Commissioner has *cited good reasons for rejecting* the opinion of a treating physician." Daniels v. Soc. Sec. Admin., 23 F. App'x 316, 317 (6th Cir. 2001) (emphasis added).

In this case, the ALJ discussed the limitations found by Dr. Huskey in his November 2006 assessment, however, he failed to provide reasons for his rejection of Dr. Huskey's limitations. Instead, the ALJ simply stated that he was relying on the physical limitations opined by the non-examining physician, Dr. Moore, because his opinion was "supported by the medical evidence and consistent with the record as a whole." [Tr. 21]. Such as finding, however, fails to address how Dr. Huskey's November 2006 assessment is not supported by medical evidence or consistent with the record as a whole. Moreover, the ALJ does not provide any reason for discounting Dr. Huskey's opinion as he was the Plaintiff's long-term treating physician[1] and was in the best position to provide a "longitudinal picture" of the Plaintiff's functional limitations as a result of his medical impairments. Wilson, 378 at 544.

---

[1] The record indicates that Dr. Huskey's treatment notes date as far back as 2001 in the record.

Accordingly, the Court finds that the ALJ erred by failing to provide reasons for rejecting the November 2006 assessment provided by the Plaintiff's treating physician, Dr. Huskey. While the Commissioner has stated potential reasons for rejecting this assessment (e.g., its timing, etc.) this does not and cannot substitute for the ALJ's determinations and reasons. On remand, the ALJ is directed to provide specific reasons for *rejecting* the opinion of Dr. Huskey, and not merely identify reasons for adopting the opinion of non-examining source, Dr. Moore.

Finally, the Plaintiff argues that the ALJ erred by finding him capable of medium work when Abraham Brietstein, Ph.D., noted that the Plaintiff's physical injuries were very problematic and excluded him from jobs that require sitting or walking. [Doc. 14 at 22]. The Commissioner responds that Dr. Brietstein is a psychologist, not a medical doctor, and he was not qualified to offer an opinion regarding the Plaintiff's physical condition.

In this case, the Plaintiff was evaluated by Dr. Briestein in January 2007. Dr. Brietstein evaluated the Plaintiff's mental limitations, and in his "Summary and Recommendations" noted that the Plaintiff's "physical injuries are more problematic, diminishing his mobility and excluding him from jobs that require sitting or walking." [Tr. 597]. The ALJ did not

The Court agrees with the Commissioner. Dr. Brietstein is a psychologist who was not qualified to "who was not qualified to diagnose" the Plaintiff's physical conditions. <u>Buxton v. Halter</u>, 246 F.3d 762, 775 (6th Cir. 2001). The ALJ did not err by failing to discuss Dr. Brietstein's assessment of the Plaintiff's physical capabilities as Dr. Brietstein's scope of expertise was that of a psychologist who was qualified to evaluate the Plaintiff's mental limitations.

Therefore, on remand, the Court finds that the ALJ must evaluate and provide reasons for his rejection of Dr. Huskey's November 2006 evaluation.

9

*2. Mental Medical Opinions of Record*

The Plaintiff argues that the ALJ improperly relied on the opinion of non-examining source, Edward L. Sachs, Ph.D., when determining that the Plaintiff suffered from only mild mental restrictions. [Doc. 14 at 21]. The Plaintiff contends that the ALJ rejected the opinion of consulting examining source, John E. Porter, M.S., without providing an analysis of such rejection. [Doc. 14 at 21]. Moreover, the Plaintiff asserts that the ALJ erred by failing to mention or discuss Mr. Porter's opined Global Assessment of Functioning ("GAF") score in his decision. [Doc. 14 at 21]. Initially, the Commissioner contends that Mr. Porter is not a treating source, and the requirements of Wilson and Roger do not apply. [Doc. 18 at 17]. In addition, the Commissioner asserts that Mr. Porter did not find that the Plaintiff suffered from significant mental limitations. [Doc. 18 at 17].

An ALJ may adopt the opinion of a state agency physician who has reviewed a claimant's file. See 20 C.F.R. § 404.1527(f)(2)(i). However, pursuant to the applicable statutes, the ALJ is to "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(d)(1); 416.927(d)(1). As the Court of Appeals has explained, "[i]n the hierarchy of opinions, the opinion of a non-examining physician is entitled to the least weight," Grecol v. Halter, 46 Fed. App'x. 773, 775 (6th Cir. 2002), because a non-examining physician lacks first-hand knowledge of the claimant's condition. Nonetheless, the Sixth Circuit Court of Appeals has held that "a non-examining physician's opinion may be accepted over that of examining doctors when the non-examining physician clearly states the reasons for his differing opinion." Carter v. Comm'r of Soc. Sec., 36 F. App'x 190 (6th Cir. 2002) (citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994)).

In this case, the non-examining source, Dr. Sachs, clearly stated his reasons for rejecting the

10

restrictive mental requirements opined by examining source, Mr. Porter. Specifically, Dr. Sachs stated that Mr. Porter's opinion was

> [O]verly restrictive and not supported by objective findings of good mental status and descriptions of good social functioning. There is no evidence of any significant cognitive impairment. Overall the evidence supports no more than moderate limitations of concentration and adaptation.

[Tr. 388]. Moreover, the ALJ stated that he was adopting the opinion of Dr. Sachs because it was "supported by the medical evidence and consistent with the record as a whole." [Tr. 21]. Therefore, the ALJ was entitled to adopt the opinion of non-examining source, Dr. Sachs, because Dr. Sachs clearly stated his reasons for disagreeing with the evaluation of Mr. Porter.

In addition, the Plaintiff argues that while the ALJ mentioned Mr. Porter's GAF score, the ALJ failed to include that, "according to the chart published by the American Psychiatric Association, this score reflects an inability to keep a job, even though this fact was specifically pointed out to the ALJ in the brief of the Claimant filed at the time of the hearing." [Doc. 14 at 21].

In this case, however, Mr. Porter did not find that the Plaintiff suffered from serious mental limitations. Specifically, Mr. Porter found that the Plaintiff was not significantly limited in his ability to understand and remember; had moderate limitations in his ability to sustain concentration and persistence; had moderate limitation in social interaction; and had at least moderate limitation in his overall adaptation due to his depression and his pain disorder. [Tr. 374-75]. Despite indicating that the Plaintiff's GAF score was between forty-five and fifty, Mr. Porter's opined mental limitations do not appear to represent "serious" limitations. Finally, the Sixth Circuit has held that a GAF score is not determinative on the issue of disability and is not highly probative evidence regarding disability. See Kornecky v. Commissioner of Social Security, 167 F. App'x. 496, 511 (6th

11

Cir. 2006), ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.").

Accordingly, the Court finds that substantial evidence supports the ALJ's decision to adopt the opinion of the non-examining psychological examiner, Dr. Sachs, over the opinion the consultative examining source, Mr. Porter.

**B. The ALJ's Treatment of Becky Brown's Vocational Evaluation**

The Plaintiff argues that the ALJ failed to discuss the vocational report of Ms. Brown that limited the Plaintiff to sedentary work in his disability determination. [Doc. 14 at 22-23]. The Plaintiff contends that the ALJ's failure to address Ms. Brown's report resulted in error. [Doc. 14 at 23]. The Commissioner responds that the Ms. Brown is a vocational specialist and she is not qualified to assess an individual's physical functional capacity. [Doc. 18 at 20]. Therefore, the Commissioner contends that the ALJ was not required to discuss Ms. Brown's opinion in his disability determination.

The Court agrees with the Plaintiff, and finds that the ALJ's failure to expressly discuss Ms. Brown's Vocational Evaluation in her narrative decision must be characterized as error. The Commissioner is correct that Ms. Brown was not an acceptable medical source.[2] But that fact alone

---

[2] When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 416.927(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 416.927(a)(2). "Other acceptable medical sources" are licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 416.913(a); 416.902 ("acceptable medical source refers to one of the sources described in § 416.913(a) who provides evidence about [a claimants's] impairments"). Ms. Brown was a self-described "vocational evaluation specialist," [Tr. 427], and nothing in the record indicates that she was an "acceptable medical source" in this case. See 20 C.F.R. § 416.913(a). The Court notes that while "licensed or certified psychologists" are listed as acceptable medical sources, nothing in the record

12

did not free the ALJ from all responsibility to consider and expressly address Ms. Brown's Evaluation. SSR 06-03p imposes procedural requirements on ALJs regarding the consideration of opinions from "other sources" and "decisions on disability by other governmental and nongovernmental agencies." 2006 WL 2329939, at *6. Regardless of whether the ALJ categorized Ms. Brown's Evaluation as an opinion from an "other source" or as a decision on disability from a nongovernmental agency, he was required to provide some explanation of the consideration it was given.

With regard to explaining the consideration given to opinions from "other sources," SSR 06-03p states as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources,"* or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Id. (emphasis added).

---

establishes that Ms. Brown's certifications as a "rehabilitation counselor" and "vocational evaluator," [Tr. 427], qualify her as a psychologist. Accordingly, Ms. Brown's Evaluation was not a "medical opinion," and the ALJ was not required to consider it as such or to accord it any special deference. See 20 C.F.R. § 416.927(a)(2). However, as explained *supra*, the ALJ was still required to expressly explain the consideration he gave to the Evaluation.

13

With regard to explaining the consideration of "decisions on disability by other governmental and nongovernmental agencies," SSR 06-03p imposes an even stricter requirement:

> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. *However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases* and in the case record for initial and reconsideration cases.

Id. at *7 (emphasis added).

In this case, the ALJ failed to even mention Ms. Brown's Evaluation in her narrative decision. That failure was plain error. Thus, the ALJ's decision simply does not allow the Plaintiff or the Court to follow her reasoning concerning Ms. Brown's Evaluation. See SSR 06-03p, 2006 WL 2329939, at *6. Accordingly, the Court concludes that this case should be remanded so that the ALJ can properly consider and discuss Ms. Brown's Evaluation.

**C. The ALJ's Credibility Determination**

The Plaintiff argues that the ALJ failed to explain his finding that the Plaintiff was not credible. [Doc. 14 at 23]. Specifically, the Plaintiff contends that the ALJ failed to address the credibility findings of his non-examining physicians. [Doc.14 at 23-25]. In addition, the Plaintiff asserts that the ALJ failed to connect specific statements made by the Plaintiff to specific reasons for finding the Plaintiff's statements incredible. [Doc. 14 at 24-25]. The Commissioner responds that comments by certain doctors contained within the record "do not compel an ALJ to make a particular credibility finding." [Doc. 18 at 21]. The Commissioner also contends that while the

14

Plaintiff correctly addressed the fact that the ALJ did not discuss the non-medical evidence in detail, it is clear that most of the Plaintiff's complaints at the hearing are unsupported by the record. [Doc. 18 at 21].

An ALJ's finding about the credibility of a claimant's allegation of disabling pain is entitled to deference. Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 531 (6th Cir. 1992) (citing Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984)); Rogers, 486 F.3d at 249 ("while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence"). However, in "close cases"–those where making a finding about the credibility of a claimant's allegation of pain was difficult for the ALJ–the Court of Appeals for the Sixth Circuit has instructed that a court reviewing the ALJ's credibility finding should "bear in mind that '[t]he Social Security Act is a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion." Cohen, 964 F.2d at 531 (quoting Marcus v. Califano, 615 F.2d 23, 29 (2d Cir. 1979)). In other words, a reviewing court should check to be sure that the ALJ erred, if at all, in favor of finding the claimant credible.

When considering a claimant's statements, the ALJ must "make a finding on the credibility of [the] statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2. Essentially, the ALJ must decide whether the claimant is telling the truth about the degree to which her impairments limit her personal activities. Id.

SSR 96-7p explains how the ALJ must make the credibility determination:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded

Case 3:10-cv-00375-TAV-CCS   Document 20   Filed 07/20/11   Page 15 of 17   PageID #: 104

> in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Id. at *4.

SSR 96-7p further explains that the ALJ should expressly address opinions concerning the claimant's credibility that are contained in the record:

> [I]f the case record includes a finding by a State agency medical or psychological consultant or other program physician or psychologist on the credibility of the individual's statements about limitations or restrictions due to symptoms, the adjudicator at the administrative law judge or Appeals Council level of administrative review *must consider and weigh this opinion* of a nonexamining source under the applicable rules in 20 CFR 404.1527 and 416.927 *and must explain the weight given to the opinion in the decision.*

Id. at *8 (emphasis added).

In this case, the ALJ did not clearly articulate why he believed the Plaintiff's statements and self-reports were incredible. He did not connect specific statements made by Plaintiff to specific reasons undermining the credibility of those statements. Further, the ALJ failed to address the credibility findings made by DDS examiner Mr. Porter and DDS non-examining Dr. Walwyn. [Tr. 370, 397]. In addition, DDS non-examining consultant Dr. Sachs found the Plaintiff to be credible, yet the ALJ also failed to address this finding. [Tr. 388]. The ALJ's failure to consider and explain

16

the weight given to the credibility findings of Mr. Porter, Dr. Walwyn, and Dr. Sachs clearly ran afoul of the requirements of SSR 96-7p. Accordingly, the Court concludes that this case should be remanded so that the ALJ can properly evaluate Plaintiff's credibility by (1) explaining his reasoning, and (2) appropriately addressing the credibility findings made by Mr. Porter, Dr. Sachs, and Dr. Walwyn.

## V. CONCLUSION

It is **RECOMMENDED** that this case be **REMANDED** to the Defendant Commissioner for further proceedings consistent with this Report and Recommendation. To that end, the Plaintiff's Motion **[Doc. 13]** is **GRANTED** only for remanding the case as aforesaid. It is also **RECOMMENDED** that the Defendant's Motion for Summary Judgment **[Doc. 17]** be **DENIED**.[3]

                                    Respectfully submitted,

                                      s/ C. Clifford Shirley, Jr.
                                    United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).